This is a picture of McElroy from 1985 and McElroy et al versus Amylin Pharmaceuticals and Pharmaceuticals et al. For all information, please see the link provided in the video description. Yes, please proceed. Thank you. Good morning. Your Honors, this is a pharmaceutical products liability action. My name is Kent Jones and I represent the plaintiffs Kenneth Ray McElroy and Janet McElroy. The plaintiffs appealed this case to the 6th Circuit after it was dismissed on several motions to dismiss by defendants per judgment with the district court on August 5, 2013. The appeal is taken against Amylin Pharmaceuticals, Inc., Eli Lilly and Company. Well, we know who they are. Okay, Your Honor. I'll move on. One issue that seems to be a basis for the dismissal is whether you've adequately alleged causation in your pleading. Yes, Your Honor. So, I mean, as I understand what you're saying in your pleading, you're saying, well, there's this temporal relationship and then by a process of elimination as you describe it, we are left with the abdominal injections. I mean, we don't know anything about this process of elimination. Why isn't that just a conclusory allegation at the end of the day? What's in the record, Your Honor, at the district court level is that there was a discussion with his doctor. His doctor was a doctor of osteopathic medicine, which as you know, focuses on bones and joints only. Right. And so they talked and said it did happen at this time when you started taking this chemical. And that's when it started and it grew into an abdominal wall cellulitis and slowed down when it quit. We know that. I thought you said in the complaint, actually, that the physician said they couldn't suggest any connection between the drug and the condition. Dr. Winters said, I'm a DO and I cannot identify that chemically the drug is what caused his condition. But I can identify, and he did in his affidavit that was before the court, identify that it did not start on this healthy, athletic commissioner of baseball until the first shots of abdominal injections. It started actually three or four years later, isn't that true? Well, he was taking it orally before. Well, I thought it actually, I mean, please correct me if I'm wrong, but I thought the problem started three or four years after the injections started. Actually, the complaint alleges that the discovery of the problem was in 2012. And part of the problem with the motion to dismiss standard, which is, in our view, can be interpreted as a motion for summary judgment, and we think that's what happened in this case, is that we have a statute of limitations to go by. And when he discovered the problem in 2012, we had to go by what we knew. Now, since then, there is proof, and we would like a summary judgment motion or to move on to trial to discuss what that proof is and see if the case is worth staying in front of the court or not. But at the time, what we knew was that Ken and his doctor knew when the injections started and knew when the problem started, which was right when the injections started, and knew when to quit. And we went further. I had two examples in my complaint. If I was a car wreck attorney, and I had a car... In your brief, I think we're familiar with that. Okay. I'll leave that one alone. If we could just go back to basics for a minute. I thought that this was a judgment of the district court dismissing for failure to state a claim in the complaint. It's 12B6. Right. Yes. And we're looking at the third amended complaint. That's the document. That's the operative document. Okay. So we're not supposed to consider things outside the complaint? That's correct. And what is your allegation of causation in the complaint? My allegation of causation is that rather than just citing the elements of an action, okay? He was injured. The defendant was responsible. I didn't just stop there. We went into the chemical nature of the drug. It's derived from a lizard poison. It's a poison that probably doesn't affect some people. But we also alleged pancreatic... I'm sorry. Isn't penicillin from mold? Correct. That's what I'm saying. It may or may not be a factor. But it is... That's your answer. I'm sorry. We did look into what the drug is made out of. And we believe that the timing is the causation. And also we alleged pancreatic penicillitis. And as it turned out, Mr. McElroy did have a penicillitis. And that is one of the problems that the FDA alerted people about. Is that alleged in the complaint? Yes, Your Honor. It is, Judge Moore. But I thought the condition that is the subject of the complaint, at least the principal one, is not the pancreatic penicillitis or whatever. Well, we are alleging the major condition was a penicillitis. And the endocrinologist that has seen him post-complaint, we can't really get into that, but we've talked about pancreatic penicillitis. So we think that we alleged what the FDA alerted people about in the complaint and that my client had to have surgery for that condition. I thought the FDA alert was for pancreatitis. It's also for pancreatic penicillitis, which is the side version. Is that in the complaint? Yes, Your Honor. It's in the third amended complaint. Do you remember which paragraph it is? I don't. I think 12. 12. Okay, thanks. Okay, so your position is you have the temporal proximity alleged in the complaint. You have the FDA alerts. Paragraph 12 says that the drug has been involved in FDA alerts indicating that acute pancreatitis and abdominal problems and conditions are associated with the drug. Correct. And that those are really the two factors that you rely on to allege causation in the complaint. Yes, Your Honor. Do you have a case that you would say would be good persuasive value for us to say that this is an adequate complaint? Well, I've thought and thought about it. And when you read Ashcroft v. Zickball and Twombly, the two Supreme Court cases that are relevant in this matter, it is our position that the Supreme Court did not mean to turn Rule 56 into Rule 12B6 and Rule 8. I understand that argument. But Judge Moore, if I may, I think is asking, is there a data point in terms of a case out there that is supportive of your argument that what you have here adequately and plausibly pleads causation? Not that I can find at this point, Your Honor. And the crucial points that I want to make, am I at a red light? Oh, I'm still green. No, you're kind of clear. Okay. The court discussed that this was a judgment based on terminology. In other words, the court can decide whether a complaint is plausible or not, and that's it. Then it's over. With proof and summary judgment, the court can't do that. And that's what we have now. And it was unfortunate that we didn't have that much proof when we had to file our complaint due to the statute of limitations. But we had to file the complaint then, and the proof that we had were observations by a doctor and a plaintiff as to what happened. And he had done nothing else different in his lifestyle to cause that. Could you seek leave to file another amended complaint that would add more in the way of allegations of causation? I would. And your red light now is on, so it is time. Thank you. Good morning, Your Honors. May it please the Court. I'd like to focus on three specific points that were raised in appellant's argument, and I'll start with the last point that Judge Moore made first regarding leave to amend the plaintiff's complaint. Despite appellant's complaint at issue being the third amended complaint, appellant never below requested leave to amend his complaint. In opposing the motion to dismiss, he never argued in the alternative that the complaint should be dismissed without prejudice. He never argued that were he given the opportunity to amend his complaint, he could cure the defects. And therefore, the dismissal of the complaint with prejudice, although not raised as a ground for appeal by appellant, if it were raised, would be reviewed under an abuse of discretion standard. And this circuit has expressly recognized that it gives great deference to the district court's decision to dismiss a complaint with prejudice, particularly whereas here there has been no argument below that the complaint should be dismissed without prejudice or that leave to amend should be granted. I don't have the docket sheet in front of me. Did your side oppose the various efforts to amend the complaint or not? Leave to amend the complaint? No, Your Honor. What more could a plaintiff have when filing a complaint that would satisfy your causation demands? Here the plaintiff, or I guess in any case, the plaintiff or the appellant could have a very specific allegation that he was diagnosed with a condition that had been associated with a medication he has taken. And he attempts to do that through the FDA alert, which I will discuss. But he's been diagnosed with a specific condition that's been associated with the medication. So when you say that has been associated with the medication, there's a missing element there. Who has associated it? What kind of entity would the drug companies feel would need to have associated it? Because, for instance, if I had associated it with it, I'm sure you would say, well, that's not enough. That's just a lay person. I think that would need to either be a medical professional saying, I believe there's some type of relationship here, which, as noted in Mr. Jones' argument and in Paragraph 5 of Plaintiff's Third Amended Complaint, appellant specifically admits that there is no doctor that has ever told him that there's any relationship between this particular medical condition he suffers from and the medication he took here by Ada. So a medical professional finding some type of arguable relationship here. A FDA providing some type of either warning or alert that there's some type of relationship or association, whether it be a causal association or a lesser association between reports of individuals taking this medication, raising concern or alert on the part of the FDA. So there are various ways there could be published studies or case reports dealing with individuals. None of that is cited to here by appellant in the complaint. AMA journal studies or New England Journal of Medicine reports, and even a case study could do that. Absolutely. And taking it to the extreme, the gold standard for establishing some type of relationship would be a clinical trial showing individuals who were given the drug. This is an FDA-approved medication. Obviously there's been extensive testing. There's data. There's information available about side effects. So the problem, thinking about this in a broad perspective, would be that the first few people who are affected would have a much more difficult time alleging causation than people who are affected by a product later when more people have been affected. In other words, you won't have 200 people taking drug X developing a particular problem  Potentially, Your Honor, although I think that goes more to the issue of causation than to the issue of being able to plead causation. And before any FDA-approved medication goes to market, there are years and years of tests on both animals and on human subjects. So there's all kinds of data, tests, clinical trials that are submitted to the FDA as part of a new drug application, and that was all done here. So why isn't paragraph 12 enough? So paragraph 12 is not enough for a couple of reasons. So Plaintiff alleges here that there are FDA alerts indicating that acute pancreatitis and abdominal problems and conditions are associated with the use of FIEDA. The FDA alerts, which are in the record and of which the district court appropriately took judicial notice, pertain to a very specific condition, and that is acute pancreatitis. And the FDA alerts, which are at page 988 and page 990 to 992 in the record, specifically deal with acute pancreatitis in patients taking FIEDA, describe the hallmark symptoms of acute pancreatitis, which are unexplained, persistent, severe abdominal pain, which may or may not be accompanied by vomiting, and instructs patients to seek prompt, urgent medical attention for acute pancreatitis. So acute pancreatitis is a very specific medical condition that has been associated by the FDA with FIEDA. The appellant does not allege that he has acute pancreatitis, although pancreatitis and paniculitis may sound similar in terms of the letters that are in them. They are not the same medical condition. Is it sufficiently plausible because it involves the same organ as the one that was the subject of the alert? I don't believe it is, Your Honor. I have no information to suggest it is. It certainly is not pled, and there's no suggestion that because the FDA has warned of acute pancreatitis that any abdominal problem, including paniculitis, falls within the umbrella. It's almost like saying that a health ailment could result from FIEDA, and therefore any health ailment may suffer. I think that the test at the end of the day is plausibility. It's a test that the court determines whether it's satisfied. We talked earlier about sources that would lead to a finding that the plaintiff has alleged some plausible connection. And I guess the question is, is it close enough to allege a different condition with the same organ, or is that just not close enough to be plausible, in your opinion? I don't believe it is close enough to be plausible, Your Honor. He's alleging a condition, a complete stomach breakdown, which he describes, and related sores and infections. Pancreatitis affects the pancreas and is a condition that is described very specifically in the FDA alerts in the record. So I don't think it even pertains to the same organ here, other than the fact that pancreatitis results in severe abdominal pain, and he's alleging problems with his abdomen. Isn't there something called pancreatic panculitis? There's something that he alleges is pancreatic paniculitis, and I don't even know that there is such a thing. The first time I heard of it was in his complaint, and I don't believe he's alleged any connection between. He's not alleged that he has pancreatitis. He makes a vague reference at one point. This is paragraph 13, possible pancreatitis. Correct. He makes a vague reference at one point to possible pancreatitis. Possible pancreatitis is not sufficient. We don't know what he means by that. Why isn't this appropriate then for either a motion for a more definite statement or for summary judgment for developing the facts of the case? Because he is on his third amended complaint, and the one allegation that has remained constant and clear is that no doctor has ever told me that my condition is related to the medication. He talks about a temporal relationship, and that temporal relationship is I started taking this drug and six years later I developed symptoms. And I believe appellant's counsel misspoke when he said that he alleged that I filed the lawsuit six years later because I was facing statute of limitations. If you look at paragraph 5 of the third amended complaint, he specifically alleges during 2012 Mr. McElroy began experiencing serious and life-threatening abdominal problems and goes on to describe them, resulting in a condition where his stomach broke down completely. It's a very vague allegation about what his condition was, but a very specific allegation about when he experienced that. So the temporal relationship here is six years later, and why do I think this is related? Why do I think this was caused? By some process of elimination. We don't know what his process of elimination entails, and the only thing that we can infer is that this is his subjective belief that he went through some process and ruled things out. A doctor didn't go through a differential diagnosis and rule this out. He has no diagnosis, no specific diagnosis of a condition at issue here, or of a condition that the FDA has said is the only condition that FDA has said is associated with biatis. I.e., acute pancreatitis. Correct. I asked your opponent what cases would support his view that this was a sufficient complaint. Do you have cases that you would rely on or that you would need to distinguish? I don't believe there are any cases I would need to distinguish, Your Honor. I think the cases that we would rely most heavily on are Twombly and Iqbal, and also this Sixth Circuit's decision in Hensley Manufacturing v. ProPride. That is a trademark infringement case, but that was dismissed because there was no alleged likelihood of confusion and fair use, and that was dismissed at the pleading stage. And the appellant challenged it on the grounds that he had alleged that facts may exist to establish confusion or no fair use, and this court said in response to that, quote, mere speculation is insufficient. It was the appellant's burden to establish or to allege those facts if they indeed exist in the first instance. How about there is a Sixth Circuit case, Gass v. Marriott Hotel Services? And that's a case that I would need to distinguish? Are you familiar with that case? I'm not, Your Honor. I apologize. Ms. Lorindo, one of your arguments, I believe, an alternative argument, is that the plaintiff has not adequately alleged that the drug is defective. Is that correct? That is correct, Your Honor. And looking at the complaint, I mean, there is a conclusory allegation in the product defect claim that it's unreasonably dangerous, and I know from your brief that you think that's inadequate. In a drug case, just a hypothetical kind of drug case, I mean, what would be an adequate allegation that a drug is unreasonably dangerous? Design defect claims in a prescription drug case are very difficult for a plaintiff to proceed on because they need to establish that this extensively tested and FDA-approved design of a drug is somehow defective, and that sometimes comes up in a case where a drug is subsequently withdrawn from the market or it's determined that there is something about the drug that wasn't discovered or potentially could have been discovered sooner. As to a warnings defect case, that's much more common in the prescription pharmaceutical case, and we also allege that plaintiffs have failed to establish and failed to adequately plead there was a warning defect. No, I understand that. I guess I'm just trying to, you know, for purposes of, I guess, comparison, I'm trying to imagine a template of an adequate allegation of design defect for a pharmaceutical. At minimum, I believe that that claim would need to allege that something specific that's wrong with the design that causes a specific condition that is unreasonably dangerous and that cannot be appropriately addressed through appropriate warnings. Thank you. In summary, I would say that appellant's allegations in the third amended complaint, again, his fourth opportunity to allege valid claims here, at best, establish that there's a mere possibility that Bayada somehow caused his alleged injuries, and his alleged right to relief is speculative at best. His claims don't, his allegations don't bring his claims across the threshold from conceivable to plausible as is required under Twombly and Iqbal, and his allegations don't justify a reasonable inference by the court that appellant is entitled to relief here against appellees and that appellees are responsible for appellant's alleged injuries. His allegations are insufficient to unlock the gates of discovery, and under Twombly and Iqbal, the district court correctly affirmed that, correctly concluded, that his claims should be dismissed and the district court's findings should be affirmed. Thank you. Your Honors, to start off with, we didn't file three complaints because we wanted to. We filed one, and then we realized that the suppliers had some connection to the case, and we filed a second one, then we were moved to federal court, and the third amended complaint, Judge Matisse ordered me to file it to separate the insurance company case, which is a state court case, upon remand, from the products liability case, which is before the federal court. So we weren't just taking our time to find out more things when we were filing complaints. Mr. Jones, if I may, I'd like to just pick up where I left off with Ms. Larendoe. I mean, we focused a lot on the causation element of your claims so far, but it does seem that your allegation of defect, I mean, is entirely conclusory, and I just want to give you the chance to tell me if I'm missing something there. Well, the problem with the new 12B6 is that we didn't have the luxury of an endocrinologist. We know a lot more about pancreatic paniculitis now than we did when we filed the complaint. We filed the complaint months after he discovered it. Well, I mean, we've got to decide this case based on the record we have and the complaint in front of us. I allege pancreatic paniculitis, and I now have an endocrinologist that supports our case. So that's the only thing I could allege in the complaint. He was seeing a family physician, a DO. He wasn't seeing an endocrinologist, and when we went to get the appointment with the endocrinologist, we had to wait eight months. So it would have been after the statute of limitations. Okay. You don't just develop a paniculitis that weighs 200 pounds or abdominal wall cellulitis. He was a healthy man. We pointed that out in the complaint. He coached baseball, and nothing started until the abdominal injections. That's the only thing he did different in his life, and I think that's fair enough to be. Is there a bit of a problem that the temporal proximity is years here as opposed to closer in time? I don't think that anybody really knew what was going on because at the College Dell Medical Clinic, this was some of their first cases of using the drug Biotta because it was relatively new. It came out around 2005, and nobody really thought about these things for years until there was a conversation, and it came to the conclusion, hey, this is the only thing you've done different, and now you've got a life-threatening condition. If he had known that if Dr. Winters or him had known that pancreatic paniculitis was the subject of an FDA alert, then that would have been a warning to them, and they would have probably stopped it sooner. But you haven't alleged that pancreatic paniculitis was the subject of an FDA alert. I alleged that this FDA alert is acute pancreatitis. Right, but I did allege pancreatic paniculitis in the complaint. Right, but one of your opponent's points is that the FDA alert is for a different problem than you're alleging that your client has. I think that's a subject for proof from a doctor. I can't go any further than that. I want to sum up the case. I met him. He had a 200-pound bag of abdominal wall cellulitis, gangrene, and staph infections. The doctor and him agreed, that just doesn't happen spontaneously. They don't know anything about Bayada at that time. It's a new drug. He'd been taking it orally for a few years and then abdominally. There came a conclusion in 2012 that that was the only thing different in his life that caused the condition that he had. When he stopped, the thing stopped growing. He's now had surgery and we've saved his life in the other action, which is a state court action. Now we're just seeking relief for pancreatic paniculitis. What's the state court action? The state court action is against the insurance company because he had three conditions, abdominal wall cellulitis, staph infections, orthopedic problems. A coverage dispute? Exactly. It's a health insurance case? Yes, Your Honor. I see I'm out of time. Are there any other questions? Thank you. Thank you very much for your argument. Thank you both. The case will be submitted. Would the clerk call any remaining cases? Thank you.